### STATE v. JUNIUS HOLDER and ARTHUR HOLDER.

(Filed 12 November, 1924.)

**Criminal Law—Felony—Statutes.**

> Where the finder of the property of another of the value of more than $20 takes the same with the intent of misappropriating it to his own use, and deprive the owner thereof, it is a felony under the provisions of our statute, C. S., 4249.

APPEAL by defendants from *Shaw, J.,* at April Term, 1924, of RICHMOND.

Criminal prosecution, tried upon an indictment charging the defendants with larceny and with receiving stolen goods valued at more than $20.00.

From an adverse verdict and judgment pronounced thereon, the defendants appeal, assigning errors.

36—188

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*W. R. Jones for defendants.*

STACY, J. The defendants, two brothers, white boys 21 and 19 years of age respectively, who live in the country with their father, about 10 miles south of Rockingham, N. C., were indicted at the April Term, 1924, of the Superior Court for Richmond County, charged (1) with the larceny of certain personal effects of the value of more than $20.00, the property of Charles Bendscheller, and (2) with receiving said articles of personal property knowing them to have been feloniously stolen or taken. C. S., 4249 and 4250.

The prosecuting witness and a friend, tourists passing through the State in an automobile, had some road trouble, or their car was stuck in the mud not far from where the defendants live in Richmond County. This was on Sunday, 6 April, of the present year. The defendants, together with others who had collected on the road, helped the tourists pull their car out of the mire; and very soon after they had left, driving southward, an overcoat belonging to one of them, was discovered on the side of the road. Henry McGee, who was riding with the defendants in their father's Ford car, said that the tourists would be back for it as soon as they discovered its loss, and in this he was correct; but one of the defendants picked up the coat, put it in their car and took it away. Upon examination, they found in the pockets of the coat a pistol, a pocketbook, travelers checks issued by the American Railway Express Company for $400.00, a fountain pen, a pencil and $7.00 in money. They divided the articles, burned the checks, and gave Sam Brady, a colored boy, $1.00 and told him not to say anything about the matter. They took the coat home, showed it to their mother and sisters and told them about the men leaving it.

In a very short time the tourists returned to get the coat. Not finding it where it had been left, they informed the sheriff that it had been stolen, and in company with one of the sheriff's deputies, they went to the home of the defendants and there found the coat. It was hanging behind a door in one of the rooms where they were accustomed to hang their clothes. No search was made for the coat; the defendants' little sister brought it out from behind the door. The boys voluntarily gave it up. The defendants claimed at first that they did not know anything about the checks, but later they admitted that they had destroyed them. There was evidence that they did not know what a check was. One of the boys could read and write; the other could not. Everything was returned to the prosecuting witness, except the travelers checks, upon which he stopped payment, and his pistol valued at $9.00. There is

nothing on the record to show what became of the pistol. The deputy sheriff testified that he found it in the Ford car belonging to the defendants' father.

All this occurred on Sunday. Court convened the following day. The grand jury promptly returned a true bill against the defendants. They were put on trial Monday morning, convicted and sentenced to the State's Prison for a term of 18 months.

The exception, upon which the defendants chiefly rely, is the one addressed to the following portion of the charge:

"Where property is lost and a person finds it, then the duty of the finder is to keep the property for the purpose of finding the owner and he must use reasonable means for the purpose of finding the owner. If he keeps it and keeps it intact for the owner, he has a right to do that, but if the property is not abandoned but is left by accident or lost and a person finds it and he takes it with the intention at the time of taking it to steal it, he is just as guilty of larceny as if he had gone in the night time and stolen it secretly."

It is the position of the defendants that they cannot be convicted of larceny, but only of forcible trespass, because of the open manner in which the property was taken. We are unable to agree with this view of the law. *S. v. Farrow,* 61 N. C., 161. The open manner of the taking is not inconsistent with larceny, provided it be done with a present, felonious intent. *S. v. Powell,* 103 N. C., 424. Larceny differs from forcible trespass in that in the former, there must be a felonious taking and carrying away of the goods and chattels of another with intent to deprive the owner of the use thereof and with a view to some advantage to the taker; whereas, in the latter an indictable trespass may consist of a forcible injury to the property of another, without taking it away, and from some motive other than advantage to the trespasser. *S. v. Deal,* 64 N. C., 270; *S. v. Foy,* 131 N. C., 804; *S. v. Oxendine,* 187 N. C., 663.

To constitute the crime of larceny, there must be an original, felonious intent, general or special, at the time of the taking. If such intent be present, no subsequent act or explanation can change the felonious character of the original act. But if the requisite intent be not present, the taking is only a trespass, and it cannot be made a felony by any subsequent misconduct or bad faith on the part of the taker. *S. v. Arkle,* 116 N. C., p. 1031.

The case was left to the jury under a charge free from error, and the defendants have been convicted of the larceny of goods in excess of $20.00 in value. This is a felony under our statute. The validity of the trial must be sustained.

No error.